**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHIPPEWA CREE TRIBE OF THE ROCKY BOY'S RESERVATION, et al., | ) | |
| | ) | No. 92-675 L |
| Plaintiffs, | ) | Judge Emily C. Hewitt |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF A PORTION OF THE COURT'S OPINION AND ORDER DATED JANUARY 26, 2006

May 10, 2006

Melody L. McCoy
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
(303) 447-8760
(303) 443-7776 - fax

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

QUESTION INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**I. THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR RECONSIDERATION ON THE GROUNDS THAT DEFENDANT HAS NOT SHOWN A MANIFEST ERROR OF LAW OR MISTAKE OF FACT THAT WOULD RESULT IN MANIFEST JUSTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3**

**II. THIS COURT'S DETERMINATION THAT THE PEMBINA JUDGMENT FUND (PJF) BENEFICIARIES HAVE A GROUP CLAIM IN THIS ACTION UNDER 28 U.S.C. § 1505 WAS CORRECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6**

**A. The PJF Beneficiaries' Group Claim Was Throughly Analyzed And Established In Decisions Of The Indian Claims Commission And This Court's Predecessor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6**

**1. The 1964 Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7**

**2. The 1980 Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11**

**B. The Claims In This Action Involve The PJF Prior To Its Distribution, And Hence Defendant's Reliance On The PJF Distribution Acts Is Irrelevant . . 13**

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

## CASES

PAGE

*Ammex, Inc. v. United States,* 52 Fed Cl. 555 (Fed. Cl. 2002), *aff'd,* 384 F.3d 1368 (Fed. Cer. 2004) , *cert. denied,* 544 U.S. 948 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cherokee Freedmen v. United States,* 161 Ct. Cl. 787 (Ct. Cl. 1963) . . . . . . . . . . . . . . . . . . . . . . 14

*Chippewa Cree Tribe of Rocky Boy's Reservation v. United States,* 69 Fed. Cl. 639 (Fed. Cl. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. 249 (Fed. Cl. 2000) . . . . . . . . . . . . . 3, 4

*Davis v. United States,* 192 F.3d 951 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Delta Ltd. v. U.S. Customs and Border Prot. Bureau,* 393 F.Supp.2d 15 (D.D.C. 2005) . . . . . . 5

*Fort Sill Apache Tribe v. United States,* 477 F.2d 1360 (Ct. Cl. 1973), *cert. denied,* 416 U.S. 993 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Franconia Assoc. v. United States,* 44 Fed. Cl. 315 (Fed. Cl. 1999), *aff'd,* 240 F.3d 1358 (Fed. Cir. 2001), *rev'd on other grounds,* 536 U.S. 129 (2002) . . . . . . 3

*Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298 (Fed. Cl. 1999) . . . . . . . . . . . . . . . . 3, 4

*International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071(D.C. Cir. 1984), *cert. denied,* 469 U.S. 1181 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Menominee Tribe of Indians v. United States,* 179 Ct. Cl. 496, 388 F.2d 998 (Ct. Cl. 1967), *aff'd* 391 U.S. 404 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mitchell v. United States,* 219 Ct. Cl. 95, 591 F.2d 1300 (Ct. Cl. 1979), *rev'd on other grounds,* 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Oglala Sioux Tribe v. United States,* 21 Cl. Ct. 176 (Cl. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Peoria Tribe of Indians v. United States,* 169 Ct. Cl. 1009 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . 13

*Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 857 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Principal Mut. Life Ins. Co v. United States,* 29 Fed. Cl. 157 (Fed. Cl. 1993), *aff'd,* 50 F.3d 1021 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians,* 355 F. 2d. 936 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Red Lake, Pembina and White Earth Bands v. United States,* 164 Ct. Cl. 389 (Ct. Cl. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Riley v. Camp,* 130 F.3d 958 (11th Cir. 1997), *cert. denied,* 524 U.S. 915 (1998) . . . . . . . . . . . . 5

*Smith v. GTE Corp.,* 236 F.3d 1292 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Te-Moak Bands of Western Shoshone Indians of Nevada v. United States,* 18 Cl. Ct. 82 (Cl. Ct. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Turtle Mountain Band of Chippewa Indians, v. United States,* 203 Ct. Cl. 426, 490 F.2d 935 (Ct. Cl. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Arroyo,* 301 F.Supp.2d 217 (D.Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Mitchell,* 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Northern Paiute Nation*, 183 Ct. Cl. 321, 393 F.2d 786 (Ct. Cl. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wise v. United States,* 18 Cl. Ct. 763 (Cl. Ct. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wolfchild v. United States,* 62 Fed. Cl. 521 (Fed. Cl. 2004) . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

*Wolfchild v. United States,* 68 Fed. Cl. 779 (Fed. Cl. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . 3

## TREATIES, STATUTES, AND ACTS OF CONGRESS

Treaty of October 2, 1863, 13 Stat. 667 . . . . . 7

Treaty of April 12, 1864 . . . . . 7

25 U.S.C. § 70a . . . . . 8

25 U.S.C. § 161a . . . . . 1

25 U.S.C. § 162a . . . . . 1

25 U.S.C. §§ 1241-1248 . . . . . *passim*

28 U.S.C. § 1491 . . . . . 17

28 U.S.C. § 1505 . . . . . *passim*

28 U.S.C. § 2501 . . . . . 2

Pub.L. No. 97-403, 96 Stat. 2022 (1982) . . . . . *passim*

33 Stat. 189 . . . . . 11

## EXECUTIVE MATERIALS

1 Indian Cl. Comm'n 575 (1951). . . . . . 7-8, 9

6 Indian Cl. Comm'n 247 (1958) . . . . . 9

23 Indian Cl. Comm'n 315 (1970) . . . . . 11

23 Indian Cl. Comm'n 326 (1970) . . . . . 11, 12

26 Indian Cl. Comm'n, 336 (1971) . . . . . 11-12, 16

## COURT RULES

R.C.F.C. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

R.C.F.C. 59(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## TREATISES

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

## QUESTION INVOLVED

1. Whether, in its motion for reconsideration of this Court's ruling that the Pembina Judgment Fund beneficiaries are an identifiable group of American Indians under 28 U.S.C. § 1505 for purposes of litigating the claims raised in this action, Defendant has shown a manifest error of law or mistake of fact that would result in manifest injustice?

## STATEMENT OF THE CASE

This action was filed in September, 1992. It raises claims of fiduciary mismanagement – misaccounting and misinvestment – on the part of the United States regarding the Pembina Judgment Fund (PJF), a tribal trust fund held by the United States as trustee for the PJF beneficiaries. This Court's Opinion and Order of January 26, 2006 resolved primarily four threshold matters and allows the breach of fiduciary trust claims raised in the action to proceed toward a determination of liability, and, if appropriate, money damages. *See Chippewa Cree Tribe of the Rocky Boy's Reservation, et al. v. United States,* 69 Fed. Cl. 639, 644-674 (Fed. Cl. 2006).[1]

In its Opinion, the Court ruled that: 1) the PJF was held in trust by the United States at least from the time that Congress appropriated the monies to satisfy the Indian Claims Commission land cession compensation awards to the PJF beneficiaries, *i.e.,* in 1964 and 1980; 2) the general tribal trust fund investment statutes, 25 U.S.C. §§161a and 162a, create "money-mandating" fiduciary trust duties on the United States with respect to its management of the PJF that are judicially enforceable

---

[1] In addition to the four general threshold matters, the January 26, 2006 Opinion also granted Plaintiffs' Motion to Amend the Complaint in this action to add the White Earth Band of Minnesota Chippewa Indians as a named party plaintiff. 69 Fed. Cl. at 665-666.

and support a cause of action for the investment claims in this action; 3) the general six-year statute of limitations, 28 U.S.C. § 2501, the claims accrual provision of which for Indian trust fund mismanagement actions has been addressed by a series of subsequent congressional Appropriations Acts, does not bar the claims in this action because the United States has never provided the requisite accounting of the PJF to its beneficiaries sufficient to trigger the limitations statute; and, 4) although Plaintiffs meet the requirements of a class action such that a plaintiff class could be certified, the action will proceed not as a class action but as a group claim under the Indian Tucker Act, 28 U.S.C. § 1505, with the PJF beneficiaries as defined in the 1971 and 1982 PJF Distribution Acts and their heirs, descendants, and successors-in interest as the requisite "identifiable group of American Indians" needed to sustain the group claim under Section 1505.[2]

On April 10, 2006, the Defendant United States filed a Motion for Reconsideration of a Portion of the Court's Opinion and Order Dated January 26, 2006. *See* Def's Motion (filed April 10, 2006). Defendant seeks reconsideration only of the fourth of these four rulings: "the ruling declaring [in Defendant's mischaracterization] that the Pembina Judgment Fund (PJF) per capita beneficiaries are an 'identifiable group' under the Indian Tucker Act, 28 U.S.C. § 1505, for purposes of litigating claims that the United States mismanaged PJF monies . . . ." *Id.* at 1. Defendant requests "that the Court reconsider and vacate. . ." its ruling on this point, "enter an order denying Plaintiffs' motion for class certification . . . and order the Plaintiffs to demonstrate a valid basis for

[2] In moving for reconsideration, Defendant often misstates the Court's holding on this point. *See, e.g.*, Def's Brief in Support of its Motion for Reconsideration at 9 ("The Court found that the per capita beneficiaries qualify as an 'identifiable group' under the Indian Tucker Act wavier of sovereign immunity . . . ."). Precisely what the Court held is that "the group of beneficiaries of the 1964 and 1980 Awards, as defined in the 1971 and 1982 Distribution Acts, including their heirs, descendants, and successors-in-interest are an 'identifiable group'" under 28 U.S.C. § 1505. 69 Fed. Cl. at 673-674.

litigating the individual per capita claims of parties who are not before this Court." *Id.* at 2.

For the reasons stated below, Plaintiffs oppose Defendant's motion, and argue that it should be denied.

## ARGUMENT

### I. THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR RECONSIDERATION ON THE GROUNDS THAT DEFENDANT HAS NOT SHOWN A MANIFEST ERROR OF LAW OR MISTAKE OF FACT THAT WOULD RESULT IN MANIFEST INJUSTICE

Defendant moves for reconsideration under Rs. C. F. C. 54(b) and 59(a). *See* Def's Brief in Support of its Motion for Reconsideration at 7-8. "The decision whether to grant a motion for reconsideration lies within the sound discretion of the court." *Coconut Grove Entm't, Inc. v. United States,*46 Fed. Cl. 249, 255 (Fed. Cl. 2000), *citing Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "The court must consider such motion with 'exceptional care.'" *Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. at 255, *citing Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298, 300 (Fed. Cl. 1999).

"To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact." *Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. at 255, *citing Franconia Assoc. v. United States,* 44 Fed. Cl. 315, 316 (Fed. Cl. 1999), *aff'd,* 240 F.3d 1358 (Fed. Cir. 2001), *rev'd on other grounds,* 536 U.S. 129 (2002).[3] "The movant does not persuade the court to grant such motion merely by reasserting arguments which were previously made and were carefully considered by the court." *Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. at 255,

[3] "Manifest" means clearly apparent or obvious. *Ammex, Inc. v. United States*, 52 Fed Cl. 555, 557 (Fed. Cl. 2002), *aff'd,* 384 F.3d 1368 (Fed. Cir. 2004), *cert. denied,* 544 U.S. 948 (2005).

*citing Principal Mut. Life Ins. Co. v. United States,* 29 Fed. Cl. 157, 164 (Fed. Cl. 1993), *aff'd,* 50 F.3d 1021 (Fed. Cir. 1995). "A motion for reconsideration 'is not intended to give an unhappy litigant an additional chance to sway the court.'" *Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. at 255, *citing Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. at 300.

"Rather, the movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." *Coconut Grove Entm't, Inc. v. United States,* 46 Fed. Cl. at 255 (citation omitted). As Defendant acknowledges, these three "exceptional circumstances" are the only circumstances that justify a court's reconsideration and modification of what otherwise would be the law of the case. *See* Def's Brief in Support of its Motion for Reconsideration at 8, *citing Wolfchild v. United States,* 68 Fed. Cl. 779, 784-785 (Fed. Cl. 2005); *see also Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888, 900 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 857 (1984) (departures from the law of the case doctrine occur "very infrequently"; the clearly erroneous / manifest injustice exception is "stringent" and requires a "strong showing of clear error").

In moving for reconsideration, Defendant apparently argues that the Court made a clear error of law in ruling that Plaintiffs in this action have a group claim under 28 U.S.C. § 1505. As Plaintiffs will show herein, however, the Court's group claim ruling was correct; it was not erroneous, let alone clearly erroneous.[4]

---

[4] Surely Defendant is not suggesting that the Court's group claim ruling is clearly erroneous on the ground that the issue of group claim jurisdiction under 28 U.S.C. § 1505 in this action was neither argued by Plaintiffs nor fully briefed by the parties. Plaintiffs at all times have alleged jurisdiction under Section 1505. And, with respect to jurisdiction, this Court "is not bound by a party's own characterization of its claims." *Wise v. United States,* 18 Cl. Ct. 763, 768 (Cl. Ct. 1989). Rather, the Court has the duty and power to determine jurisdiction on its own. *See Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001); *International Ins. Co. v. Caja*

But even assuming *arguendo* that Defendant is correct that the Court's group claim ruling was clearly erroneous, Defendant's motion nevertheless must fail because Defendant cites no intervening change in controlling law and no new evidence that was previously unavailable. Nor does Defendant point to any authority for the proposition that such an error amounts to "manifest injustice."[5]

> Both parts of the formula are likely to be required, demanding both a showing of clear error and a finding that failure to correct the error would cause manifest

---

*Nacional de Ahorro y Seguro,* 293 F.3d 392, 395-396 (7th Cir. 2002).

[5] In the civil area, some courts have noted that "manifest injustice" at least for reconsideration motions purposes remains largely undefined. *See, e.g., Delta Ltd. v. U.S. Customs and Border Prot. Bureau,* 393 F.Supp.2d 15, 17 (D.D.C. 2005); *compare United States v. Arroyo,* 301 F.Supp.2d 217, 225 (D.Conn. 2004) (citation omitted) (in criminal cases, "manifest injustice means that there must be a real concern that an innocent person may have been convicted").

At least one judge, however, has noted aptly that, at least in civil appeals,

> In the context of the applicability of the law of the case doctrine, . . . "manifest injustice" does not simply mean that a reasonable argument exists that the first panel's decision was wrong. Otherwise, the exception swallows the rule: If the doctrine of law of the case applies only where the second appellate panel believes that the first was absolutely correct, the doctrine means nothing. Indeed, as we have previously explained, "the law of the case doctrine does not apply to bar reconsideration of an issue when . . . the prior decision was clearly erroneous *and* would work manifest injustice." Therefore, whatever "manifest injustice" means, it surely does not simply mean that the prior panel's decision was incorrect; rather, the doctrine stands for the proposition that, absent extraordinary circumstances, a panel of this court should adhere to a previous panel's decision in the same case *even if that decision is erroneous.* . . . That determination, although perhaps not to everyone's liking, is consistent with the jurisprudential ideal of finality, economy of judicial resources, and respect for prior appellate decisions that the law of the case doctrine embodies.

*Riley v. Camp,* 130 F.3d 958, 989 (11th Cir. 1997), *cert. denied,* 524 U.S. 915 (1998) (Birch, J., concurring in denial of rehearing *en banc*) (citations omitted; emphasis in original). This guidance also is appropriate to motions for reconsideration in civil trial courts.

> injustice . . . . A decision that refuses to invoke the manifest-injustice exception may conclude that there is neither clear error nor manifest injustice.

Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (2005) (footnotes omitted); *cf. Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1082 (D.C. Cir. 1984), *cert. denied,* 469 U.S. 1181 (1985) (absent truly exceptional circumstances, courts should not look favorably on arguments against the law of the case which fall only under the 'manifest injustice' rubric."). Absent a showing of an exceptional circumstance, Defendant has not met its stringent burden of proof to warrant reconsideration.

## II. THIS COURT'S DETERMINATION THAT THE PEMBINA JUDGMENT FUND (PJF) BENEFICIARIES HAVE A GROUP CLAIM IN THIS ACTION UNDER 28 U.S.C. § 1505 WAS CORRECT

### A. The PJF Beneficiaries' Group Claim Was Thoroughly Analyzed And Established In Decisions Of The Indian Claims Commission And This Court's Predecessor

A large portion of Defendant's Brief in Support of its Motion for Reconsideration is devoted to an argument that the Indian Tucker Act, 28 U.S.C. § 1505, gives this Court jurisdiction to hear, *inter alia,* claims brought by "identifiable group[s] of American Indians," as opposed to claims brought by individual Indians.[6] *See* Def's Brief in Support of its Motion for Reconsideration at 8-19. Plaintiffs do not dispute this point. However, this Court has determined correctly that the claims of the PJF beneficiaries in this action are not individual claims; they are group claims here as they were before the Indian Claims Commission (ICC) and this Court's predecessor, the Court of Claims.

This Court correctly described the source of the two ICC land cession compensation awards

---

[6] The Indian Tucker Act, 28 U.S.C. § 1505, was first enacted in 1946 as Section 24 of the Indian Claims Commission Act, 60 Stat. 1049, 1055. *See Mitchell v. United States,* 219 Ct. Cl. 95, 591 F.2d 1300, 1303 (Ct. Cl. 1979), *rev'd on other grounds,* 445 U.S. 535 (1980).

which comprise the PJF. *See* 69 Fed. Cl. at 644-646. The Court noted generally that two distinct claims before the ICC and the Court of Claims resulted in a 1964 PJF Award and a 1980 PJF Award. *Id.*

The Court also correctly stated that in the ICC, the PJF claims were brought under the provision of the ICC Act that allowed such claims to be brought by, along with tribes and bands, the broader plaintiff category of "other identifiable group[s] of American Indians." 69 Fed. Cl. at 671-672, *citing* the ICC Act at § 2. This Court noted that the ICC's group claim ruling was affirmed by the Court of Claims. *Id.* at 672-673 (citations omitted). While the Court's Opinion quotes extensively from the ICC and Court of Claims' PJF decisions, Plaintiffs provide here a slightly more in-depth version to show the thoroughness of those tribunals' analyses as they established and affirmed this point.

**1. The 1964 Award**

The PJF 1964 Award arose from lands ceded to the United States under the Treaty of October 2, 1863, 13 Stat. 667, as modified by the Treaty of April 12, 1864. *See* 69 Fed. Cl. at 644 and 672-673. This Court correctly noted the original finding of the ICC with respect to the claim being made by an "identifiable group of American Indians" within the meaning of the ICC Act.

> The Pembina Band of Chippewa Indians was a duly recognized band of Indians at the time the treaty of October 2, 1863 (13 Stat. 667) was negotiated with said band wherein it ceded to the United States its interest in the lands for which the claim in this action is made. Although said Pembina Indians are not presently recognized as an organized band of Indians, its members or their descendants are an identifiable group of American Indians residing within the territorial limits of the United States, having a common claim which they are authorized to have heard and determined by the Commission under Section 2 of the Indian Claims Commission Act.

1 Indian Cl. Comm'n 575, 576 (1951), *cited in* 69 Fed. Cl. at 672.

This Court also noted that the United States had questioned whether the Pembina Band of Chippewa Indians was an "identifiable group of American Indians" within the meaning of Section 2 of the ICC Act (*then codified at* 25 U.S.C. § 70a). 1 Indian Cl. Comm'n at 587, *cited in* 69 Fed. Cl. at 672-673. This Court explained that in response to the government's concerns the ICC held that an "identifiable group" under Section 2 need not be an existing political group. *Id.* Rather, "[t]he controlling question is whether the claimant group can be identified and have a common claim." *Id.*

This Court quoted verbatim the ICC's analysis leading up to its conclusion.

> As the plaintiffs concede that the Pembina Indians are no longer organized as a band, the question is whether its members, or descendants of the members of the Pembina Band as it existed and was recognized at the time of the 1863 treaty, can be identified. If they can be so identified, then any one of their group is authorized by express statute to present this claim as a representative of all the members, as provided by Section 10 of the Indian Claims Commission Act (25 U.S.C. 70a), which provides that: "any claim within the provisions of this Act may be presented to the Commission by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members.
>
> We believe that it is such a representative action that is presented here. It is true that in the caption of the petition the Pembina Band is named as one of the plaintiff bands, which would indicate that the claim was presented by an existing organized band; however, the allegations of the petition clearly show that this claim is presented by individual members, or descendants of members, of the Pembina Band or Group of Chippewa Indians which was a party to the 1863 treaty cession of lands, out of which this claim arises, and that they are acting as the representatives of all the members or descendants or members of said band.

1 Indian Cl. Comm'n at 588-589, *cited in* 69 Fed Cl. at 673.

Although not quoted by this Court, another excerpt of the ICC's decision on this point is as follows:

> As heretofore stated, the Pembina Band of Indians was recognized as a separate and distinct band of Chippewa Indians and was dealt with as such by the Government at the time the 1863 treaty was negotiated. The record shows that some years thereafter the United States officials moved the members of the band and settled them on a

> portion of the White Earth Reservation. They were listed separately on the census rolls at that reservation as Pembina Indians until 1923 – the 1922 roll showing 519 of them. But apparently due to a change in the method of making census rolls, no separate roll appears to have been maintained of these Indians as Pembina Indians after 1922. However, regardless of how these Pembina Indians were listed on the census rolls after 1922, we believe the evidence shows quite conclusively there is a group of Pembina Indians now living who are descendants of members of the Pembina Band that was a party to the October 2, 1863 treaty out of which the present claim arose, and they can be identified and have a group claim which they are entitled to have determined by this Commission.

1 Indian Cl. Comm'n at 590.

And, in a later Finding of Fact for this and other claims, the ICC reiterated that

> Although the Pembina Band does not presently maintain a tribal organization, the members and descendants of members of the Pembina Band, as it was constituted in 1863, are an identifiable group of American Indians within the meaning of the Indian Claims Commission Act, and have a common claim which they are authorized to have heard and determined by the Commission under Section 2 of said Act.

6 Indian Cl. Comm'n 247, 250 (1958).

The claimants that brought the PJF 1964 Award claims before the ICC appealed certain aspects of the ICC's final award to the Court of Claims. On that appeal, as this Court noted, the Court of Claims reminded the parties that, "It has now been established, and is conceded by appellee [the United States], that the award must go to the tribal entities rather than descendants of the bands." *Red Lake, Pembina and White Earth Bands, et al., v. United States,* 164 Ct. Cl. 389 (Ct. Cl. 1964), *cited in* 69 Fed Cl. at 644. Based on this ruling by the Court of Claims, the ICC modified its original findings accordingly.

> [A]n order was also issued . . . saying that "in compliance with the Court of Claims decision in this case the award will be made to the tribal entities rather than the descendants of the bands. All our previous findings and statements with reference to the 'members and descendants of members' of the two bands should be disregarded in compliance with the Court of Claims decision."

*Red Lake and Pembina Bands, et al., v. Turtle Mountain Band of Chippewa Indians,* 355 F. 2d. 936, 942 (Ct. Cl. 1965).

From the ICC's amended final award, the Little Shell Band appealed to the Court of Claims the issue of the deleted reference to "members and descendants of members." The Little Shell Band was specifically concerned that

> [a]ll the modified findings now declare is that there is a Pembina Band in existence, but that its composition and status are left wholly undetermined. We are asked to send the case back to the Commission to inquire into these questions and to make proper findings.

355 F.2d at 942-943. The Court of Claims understood the subtlety of the Little Shell Band's appeal.

> All parties agree that a substantial number of descendants of the Pembina Band of the last century are now living. Although the Commission's modified findings do not so state (at least explicitly), we can take that as an undisputed and conceded fact. If that is enough for an "identifiable group", there is certainly no need to disturb the Commission's final award and needlessly to require a technical crossing of the t's via a further modification of the findings to reinstate the excised references to descendants. But the gravamen of the Little Shell complaint is that an aggregation of such present-day descendants cannot constitute an "identifiable group" under the Act. Something more, very vaguely defined, is said to be necessary; and that something more, it is argued, has not yet been shown to exist . . . .

*Id.* at 943.

As this Court noted, however, the Court of Claims was not persuaded by the Little Shell Band's argument on this point.

> We think that the appellant is mistaken in demanding proof of such an additional element. Congress made it very clear in the Act that a claim can be prosecuted and satisfied even though no recognized tribal organization is the claimant. Awards have often been entered for such unorganized or informal groups. Since the statute imposes no organizational requirement, there is no basis for creating one by judicial gloss. And once the need for some formal organization is dismissed, we know of no outer boundary for defining an "identifiable group" which would properly stop short of a group of descendants of a once-organized tribe or band. Congress has said nothing about geographical propinquity, appearance on a common roll of Indians, recognition

> by the Secretary of the Interior, or any similar tie which appellant can suggest as sufficient. The Claims Commission Act gives us no leave to require such special indicia of communality. On the other hand, we must recognize that the Act seeks, generally, to remedy group wrongs done by the United States to the Indians in the century-and-three-quarters before the enactment in 1946; it would not accord with that paramount end to carve out from the proffered relief a substantial segment of those injuries simply because the historic group which suffered the detriment has been dissipated – perhaps as a consequence of the wrong – and no longer has any bond other than kinship.

355 F.2d at 943 (citations omitted), *cited in part at* 69 Fed. Cl. 673.

Thus, over a period of fourteen years, and in response to various arguments from several parties against the point, the ICC and the Court of Claims never deviated from their determination of the PJF beneficiaries' group claim for the 1964 Award.

**2. The 1980 Award**

As this Court noted correctly, the PJF 1980 Award stemmed from lands ceded pursuant to an 1892 Agreement negotiated with the Chippewas, amended and approved by Congress in 1904, 33 Stat. 189, 194. *See* 69 Fed. Cl. at 645. This Court also noted correctly that the petitioners for this claim before the ICC included "the Turtle Mountain Band of Chippewa Indians, the Pembina Band of Chippewa Indians and certain individual members of that band, and the Little Shell Band of Chippewa Indians . . . and certain individual members of that band." 23 Indian Cl. Comm'n 315, 318 (1970); *see also* 69 Fed Cl. at 645.

Although not noted by this Court, the ICC originally referred to these PJF 1980 Award petitioners collectively as the "Chippewa plaintiffs" and their ancestral landowning entity as the "Plains-Ojibwa." 23 Indian Cl. Comm'n at 316. The ICC found that the petitioners were proper plaintiffs because they descended from the Plains-Ojibwa and they were an "identifiable group as that term has been defined by the Court of Claims." *Id.* at 318-20; *accord* 23 Indian Cl. Comm'n 326,

326-27 and 328 (1970).

On rehearing, the ICC affirmed its position that the proper ancestral landowning entity for the PJF 1980 Award was the group of Chippewas which was known in 1863 as the Pembina Band, and for the purposes of this claim the ICC would designate the group as the Plains-Ojibwa. 26 Indian Cl. Comm'n, 336, 340 and 346-349 (1971).

Interlocutory appeals from the ICC to the Court of Claims involving the PJF 1980 Award included an issue over the finding "that Indian title to the awarded area was held at the time of taking by an entity it denominated the "Plains-Ojibwa." *Turtle Mountain Band of Chippewa Indians, v. United States,* 203 Ct. Cl. 426, 490 F.2d 935, 950-953 (Ct. Cl. 1974). The Court of Claims did find problems with the use of such an anthropological *linguistic* (as opposed to ethnologic) term.

> For these reasons we modify the Commission's findings and determination to this extent – the ancestral landowning entity will be denominated as the 'American Pembina Chippewa group (full and mixed bloods), including subgroups of the Turtle Mountain Band, the Pembina Band, and the Little Shell Bands.'

490 F.2d at 952 (citations omitted). This modification nevertheless affirmed the decision that the 1980 PJF Award claims were brought by "an identifiable group of American Indians on whose behalf an action may be maintained under the Indian Claims Commission Act." 23 Indian Cl. Comm'n at 328.

Thus, like the group claim of the PJF 1964 award, the group claim of the beneficiaries of the PJF 1980 Award was thoroughly considered and established by the ICC and the Court of Claims. Defendant has failed to show any error in this Court's ruling on this point, let alone that the ruling was clearly erroneous and manifestly injust.

And, to the extent that the Court in the instant action "designates the four Plaintiff Tribes as

the representatives" of the plaintiff group – a particular point with which Defendant takes issue, *see* Def's Motion for Reconsideration at 1; *accord* Def's Brief in Support of its Motion at 4 and 25-26, it is clear that at least some of these same Tribes were the named representative plaintiffs before the ICC and Court of Claims as well. There is no clear error or manifest injustice on this point because the Plaintiff Tribes themselves clearly are members of the plaintiff group. They therefore can represent any and all other members of the group. *See Te-Moak Bands of Western Shoshone Indians of Nevada v. United States,* 18 Cl. Ct. 82, 87 (Cl. Ct. 1989) (under the ICC Act, it was the law that a tribe's representation can extend to its own members and to more than just itself and its own members – a tribe can represent an "identifiable group as a whole."); *see also Peoria Tribe of Indians v. United States,* 169 Ct. Cl. 1009, n.2 (Ct. Cl. 1965) (what matters is that no interested party is excluded, *i.e.,* that all interested parties are represented by the representative plaintiffs). Defendant's motion for reconsideration simply seeks to re-litigate well-established matters, without any showing of a manifest error of law that would result in manifest injustice.

### B. The Claims In This Action Involve The PJF Prior To Its Distribution, And Hence Defendant's Reliance On The PJF Distribution Acts Is Irrelevant

Plaintiffs have made clear repeatedly that this action raises claims of alleged breaches of trust on the part of the fiduciary up until the point of any valid and proper distribution(s) of the PJF by the trustee to its beneficiaries. *See, e.g.,* Plaintiffs' Memorandum in Support of Their Amended Motion for Class Certification at 22-24, 26 (dated Aug. 31, 2004); Plaintiffs' Reply in Support of Their Renewed Motion for Class Certification at 8-10 (dated Sept. 6, 2005); Plaintiffs' Opposition to Defendant's Motion to Supplement the Record with Declaration of Ross O. Swimmer at 5-8 (dated

Jan. 20, 2006).[7] This action raises no claims about PJF money that was validly and properly distributed. *Compare Davis v. United States,* 192 F.3d 951 (10th Cir. 1999) (challenge to judgment fund distribution act by group of descendants excluded from judgment act programs).

This Court has held that fiduciary trust obligations of the United States with respect to the PJF existed at least from the time of the appropriations by Congress to satisfy the PJF Awards in 1964 and 1980. 69 Fed. Cl. at 646-656. Defendant does not contest that ruling. Defendant acknowledges that the distributions of the PJF Awards did not begin until 1984 and 1988, respectively, and, with respect to the 1980 Award a final distribution began as late as 1994. *See* Brief in Support of Def's Motion

---

[7] The fact that Plaintiffs' transactional claims in this action include claims that some of the accounting transactions, especially disbursements, from the PJF were invalid does not change this point under Plaintiffs' theory of the case. It is undisputed in this action that at least until the tribal shares and per capita distributions were actually initiated, PJF monies were held in accounts which kept separate the 1964 and 1980 Awards, but which nevertheless were common to all PJF beneficiaries of each Award. *See* 69 Fed. Cl. at 666-667. If a disbursement by the trustee was invalid, under Plaintiffs' theory, the money that was erroneously disbursed should have remained in the common account and should have been earning interest or investment earnings at an equal rate for all beneficiaries unless and until it was validly and properly disbursed. This theory presents purely common issues of law and fact: *actions on the part of a fiduciary that affect each and every eligible beneficiary similarly*.

Nor is Plaintiffs' theory of this case an attempt to "circumvent the group claim requirement by recasting individual claims as Tribal or group claims . . . [or] by arguing that a collection of claims individually-held by group members is the same as a group claim." *See* Def's Brief in Support of its Motion for Reconsideration at 18-19, *citing Fort Sill Apache Tribe v. United States,* 477 F.2d 1360 (Ct. Cl. 1973)*, cert. denied,* 416 U.S. 993 (1974) and *Cherokee Freedmen v. United States,* 161 Ct. Cl. 787 (Ct. Cl. 1963). Defendant made this same argument in *Wolfchild v. United States,* 62 Fed. Cl. 521, 539-540 (Fed. Cl. 2004) and it was soundly rejected there. As in *Wolfchild* , the claims here are not "personal claims," they are "brought specifically and solely as members of a group." *Id.* The claims in this action do not raise issues of "loss of liberty suffered by individual tribal members"(*see Fort Sill Apache Tribe)* or "individual proof"of beneficiary eligibility *(see Cherokee Freedmen)*. Rather, this action is like *Wolfchild,* where Plaintiffs' "have a collective interest in ascertaining whether the government had a fiduciary duty to them and whether that fiduciary duty has been violated or abridged." 62 Fed. Cl. at 540. The facts and law that are pertinent to liability and damages determinations in this action are the same regarding all PJF beneficiaries.

for Reconsideration at 1. This sequence of events allows for periods of at least twenty and fourteen years, respectively, for fiduciary malfeasance to have occurred to the PJF as a common fund before any distributions of it were initiated.

Defendant nevertheless hinges its entire reconsideration argument on its theory that the PJF Distribution Acts, 25 U.S.C. §§ 1241 - 1248 (1971) and Pub. L. No. 97-403, 96 Stat. 2022 (1982), somehow impliedly and retroactively "abolished" the PJF beneficiaries' group claim, or converted it into something other than a group claim, *i.e.,* in the words of Defendant "per capita claims." *See* Def's Brief in Support of its Motion for Reconsideration at 5-7 and 21-25.[8]

Just as this Court did not accept Defendant's argument that the Distribution Acts "retroactively" defeated the trust status of some of the PJF monies from the time of their appropriation, *see* 69 Fed. Cl. at 654-655, it similarly should reject Defendant's effort now to use the Distribution Acts to eliminate retroactively some breach of trust claims during the time period that all of the funds were held in trust communally. Defendant apparently still fails to grasp that the Distribution Acts speak simply to how the PJF was to be distributed. The claims in this action are about *how much money there should have been in the PJF for Defendant to distribute* if the money had been properly and fully accounted for and invested. The Distribution Acts have no bearing on

---

[8] Defendant points to no express statutory language that it claims abolishes or terminates the PJF beneficiaries' group claim. Defendant's argument appears to be that the Distribution Acts abolished the group claim by implication.

Moreover, throughout its Brief, Defendant uses the term "per capita claims" as well as other variations of the same term, *e.g.,* "individual claims." These terms appear nowhere in this Court's Opinion; nowhere in the Distribution Acts; and, nowhere else in this litigation. Rather, these terms are Defendant's way of assuming the point at issue, which is whether the Court correctly determined that the PJF beneficiaries have a group claim in this action within the meaning of 28 U.S.C. § 1505.

the claims raised herein.

Defendant's argument here that the Distribution Acts somehow implicitly converted the PJF beneficiaries' group claim into "individual claims" is similar to one that was made and rejected in the PJF ICC proceedings. With respect to the PJF 1980 Award, it was argued on rehearing before the ICC that, *inter alia*, because of the rule that ICC Act awards must run in favor of a tribal entity, mere individual descendants of members of the wronged entity could not participate in the claim. 26 Indian Cl. Comm'n at 349-350. The ICC disagreed. Regarding representation and the composition of an "identifiable group," the ICC found that the ICC Act clearly allowed "identifiable groups" to include members whose ancestors were members of the group when the claim arose. *Id.* at 350-351. The ICC reminded the parties that it is "the ancestral wronged entity" which holds the claim. *Id.* at 351. "If that entity divides after the date of the alleged wrong none of the resulting factions is the sole successor in interest even if the United States has recognized it as the continuation of the tribe." *Id.* (citations omitted); *accord United States v. Northern Paiute Nation*, 183 Ct. Cl. 321, 393 F.2d 786, 792 (Ct. Cl. 1968) (citations omitted) ("It may be that after an award is made and submitted to Congress, Congress may wish to legislate further concerning the payment and distribution of the award, 'but this should have no bearing upon the question of jurisdiction to hear and determine the claims presented to the [Indian Claims] Commission.").

Defendant's argument here also is virtually identical to one that failed recently in another on-going breach of trust action, *Wolfchild v. United States,* 62 Fed. Cl. 521, 539-540 (Fed. Cl. 2004). In *Wolfchild,* in an effort to defeat jurisdiction there under, *inter alia,* 28 U.S.C. § 1505, the United States argued on several grounds that the plaintiffs were "individual Indians and not a tribal group." 62 Fed. Cl. at 539. The Court in *Wolfchild* rejected the government's argument, including on the

ground that "the alleged divestiture of rights occurring after the 1980 [land transfer] Act does not elide any jurisdiction that would arise under the Indian Tucker Act." *Id. citing Menominee Tribe of Indians v. United States,* 179 Ct. Cl. 496, 388 F.2d 998, 1001 (Ct. Cl. 1967), *aff'd* 391 U.S. 404 (1968).[9] The result here should be the same.

**CONCLUSION**

Defendant utterly has failed to show a manifest error of law (or mistake of fact) in this Court's January 26, 2006 Opinion that would result in manifest injustice and hence its motion for reconsideration must be denied. Indeed, granting the motion and modifying the opinion as Defendant suggests would create the most manifest injustice of all: after fourteen years of litigation, the elimination or obstruction of the breach of fiduciary trust claims of PJF beneficiaries under 28 U.S.C. § 1505 based on no congressional intent to do so and no supporting case law. "An important goal of the Indian Tucker Act was to ensure that Indians would be given 'their fair day in court so that they can call the various Government agencies to account on the obligations that the Federal government assumed.'" *Oglala Sioux Tribe v. United States,* 21 Cl. Ct. 176, 177 (Cl. Ct. 1990), *citing*

---

[9] In moving for reconsideration, Defendant urges this Court not to follow the "dual jurisdictional dicta in *Wolfchild* that . . . [found] jurisdiction exists over the same claims under both the Indian Tucker Act and the Tucker Act." *See* Def's Brief in Support of its Motion for Reconsideration at 19-21, *citing* 62 Fed. Cl. at 540-41. Plaintiffs submit that Defendant's concerns with *Wolfchild* are not relevant to the instant case. Unlike the Court in *Wolfchild,* the Court here found jurisdiction only under 28 U.S.C. § 1505. There has been no finding of jurisdiction under 28 U.S.C. § 1491.

*United States v. Mitchell,* 463 U.S. 206, 211 n.8 (1983).

For the reasons stated above, Defendant's motion for reconsideration should be denied.[10]

DATED this 10th day of May, 2006.

Respectfully submitted,

*/s/ Melody L. McCoy*____________________

Melody L. McCoy
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776

Counsel of Record for Plaintiffs

[10] Once Defendant's Motion for Reconsideration has been resolved, the parties can proceed to address the issue of notice to the group. *See* Court's Order at 2 & n.1 (Apr. 18, 2006) (mooting Plaintiffs' prior notice motion and stating that "a fresh filing by the parties of agreed forms and methods of notice to the group as shall serve reasonably to publicize the pendency of this action and the opportunity to participate therein shall be considered following the resolution of the Reconsideration Motion.").