**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **Chippewa Cree Tribe of the Rocky Boy's Reservation, et al.,** | : | |
| **Plaintiffs** | : | **No. 92- 675 L** |
| **v.** | : | **Judge Emily C. Hewitt** |
| | : | |
| **United States of America,** | : | |
| **Defendant** | : | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF A PORTION OF THE COURT'S OPINION AND ORDER DATED JANUARY 26, 2006**

Carol Catherman
Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0465
Facsimile: (202) 353-2021

Counsel of Record for Defendant

Of Counsel:

Elisabeth C. Brandon
Attorney-Advisor
Office of the Solicitor
United States Department of the Interior

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. Plaintiffs have not demonstrated that the current claims satisfy Indian Tucker Act jurisdictional requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. The Indian Tucker Act group claim and class action commonality requirements are not interchangeable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

3. Allowing the claims to be litigated under the Indian Tucker Act will violate due process requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Chippewa Cree Tribe v. United States*, 69 Fed. Cl. 639 (2006) . . . . . . . . . . . . . . . . . . . . *passim*

*Fields v. United States*, 191 Ct. Cl. 191, 423 F.2d 380, 383 (1970) . . . . . . . . . . . . . . . . . . . 3, 4

*Fort Sill Apache Tribe v. United States*, 477 F.2d 1360, 1362 (Ct. Cl. 1973) . . . . . . . . . . -4-, -9-

*In re Consolidated United States Atmospheric Testing Litigation v. United States*, 820 F.2d 982 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994) . . . . . . . . . . . . . . . . . . -3-

*LeBeau v. United States*, 171 F.Supp. 1009, 1017-20 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Northern Paiute Nation v. United States*, 10 Cl. Ct. 401, 404, 409 (1986) . . . . . . . . . . . . *passim*

*Quinault v. Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972) . . . . . . . . . . . . . . . 8,9

*Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians*, 355 F.2d 936, 944 (Cl. Ct. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Red Lake, Pembina and White Earth Bands, v. United States*, 164 Ct. Cl. 389 (Ct. Cl. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Renne v. Geary*, 501 U.S. 312, 316 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Sisseton-Wahpeton Sioux Tribe v. United States*, 686 F. Supp. 831, 836 (D. Mont. 1988). -7, 8

*Turtle Mountain Band of Chippewa Indians v. United States*, 225 Ct. Cl. 746 (1980) . . . . . . -3-

*Upper Chehalis Tribe v. United States*, 155 F. Supp. 226 (Ct. Cl. 1957) . . . . . . . . . . . . . . . -10-

*Wolfchild v. United States* , 68 Fed. Cl. 779, 784-85 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Wolfchild v. United States*, 62 Fed. Cl. 521, 538-40 (2004) . . . . . . . . . . . . . . . . . . . . . . -4-, -11-

*Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir. 1990) . . . . . . . . . . . -2-

**FEDERAL STATUTES**

Act of December 31, 1982, 96 Stat. 2022 ("1982 Distribution Act") . . . . . . . . . . . . . . . . *passim*

25 U.S.C. § 1244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

25 U.S.C. § 1245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

25 U.S.C. §§ 1241-1248 ("1971 Distribution Act") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

25 U.S.C. §§ 70-70w) (1946 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -5-

28 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

60 Stat. 1049 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

85 Stat. 158-159 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Pub. L. No. 92-59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

**FEDERAL RULES**

RCFC 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

RCFC 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

## SUMMARY OF ARGUMENT

The Court should exercise its discretion under RCFC 54(b) and 59(a) to reconsider and vacate the January 26, 2006 ruling, 69 Fed. Cl. at 669-74, permitting the Plaintiffs[1/] to litigate funds mismanagement claims of the Pembina Judgment Fund ("PJF") per capita beneficiaries as a "group claim" under the Indian Tucker Act., 28 U.S.C. § 1505, and designating the Tribal Plaintiffs as the representatives of that group. *Id.* Classifying the individually-held, vested per capita claims[2/] as a "group claim" is a clear error of law. If allowed to stand, the ruling will result in manifest injustice by failing to guarantee the due process rights of individual per capita PJF beneficiaries who are not before this Court. The Court should also deny Plaintiffs' motion for class certification, *see* 69 Fed. Cl. at 669-70, for the reasons stated in the United States' opposition and reply briefs to Plaintiffs' motion and in the Supplemental Declaration of Ross Swimmer, and order the Plaintiffs to demonstrate a valid basis for litigating claims held by the PJF per capita beneficiaries.

Plaintiffs have not demonstrated that this Court has jurisdiction over the per capita

---

[1/]The named plaintiffs are four Tribes, the Turtle Mountain Band of Chippewa Indians, the Chippewa Cree Tribe of the Rocky Boy's Reservation, the Little Shell Band of Chippewa Indians of Montana, and the White Earth Band of Minnesota Chippewa Indians ("White Earth Band"). Compl., ¶¶ 3-5; *see also* 69 Fed. Cl. at 666-68 (permitting joinder of White Earth Band as a plaintiff). In denying as moot Plaintiffs' Renewed Motion for Class Certification, the Court also ruled that the thirty-four individuals, whom Plaintiffs sought to join, can participate in the case as part of the Plaintiff group. 69 Fed. Cl. at 674.

[2/]Plaintiffs inappropriately challenged the descriptive phrase "per capita claims" as a new category of claim manufactured by the United States. *See* Pl. Opp., p. 15 "Per capita" claims is a descriptive phrase that is not only accurate, it underscores a key distinction that Plaintiffs blur. Trust funds management claims based on the per capita shares of the 1964 and 1980 Awards belong to the per capita beneficiaries, and claims based on the Tribal shares of the 1980 Award belong to the Tribes. It is critical not to lose sight of the important ownership distinctions in analyzing the jurisdictional issues.

claims under the Indian Tucker Act. Plaintiffs rely solely on jurisdictional findings by the Indian Claims Commission ("ICC") and the Court of Claims allowing the Tribes to litigate land compensation claims for ceded Tribal lands under the Indian Claims Commission Act of 1946 ("ICCA"), ch. 959, 60 Stat. 1049, 1050 (codified at 25 U.S.C. §§ 70-70w) (1946).[3] The prior findings are not a substitute for demonstrating that the current funds mismanagement claims held by the per capita beneficiaries meet the Indian Tucker Act jurisdictional requirements. Further, the prior findings do not offer authoritative or even persuasive support for Plaintiffs' jurisdictional claims.

**STANDARD OF REVIEW**

Plaintiffs' reliance on case law stressing the impropriety of moving for reconsideration as a means of rearguing issues briefed earlier is misplaced. *See* Pl. Oppos., pp. 3-4. The briefs submitted on the class certification issues did not address the Indian Tucker Act "identifiable group and "group claim" requirements. Thus, although the issues are presented in the form of a motion for reconsideration, the parties are now briefing the jurisdictional issues for the first time, and the Court can properly exercise its discretion to grant the relief sought. *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir. 1990) (granting a motion for reconsideration "lies largely within the Court's discretion"); *see also Wolfchild v. United States* ("*Wolfchild II*"), 68 Fed. Cl. 779, 784-85 (2005) (Court has inherent authority to modify interlocutory orders so long as the parties' settled expectations of the law of the case doctrine

---

[3] *See Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians*, 355 F.2d 936, 944 (Cl. Ct. 1965); *Turtle Mountain Band of Chippewa Indians v. United States*, 225 Ct. Cl. 746 (1980); *see also* 69 Fed. Cl. at 640-42.

are preserved).

## ARGUMENT

### 1. Plaintiffs have not demonstrated that the current claims satisfy Indian Tucker Act jurisdictional requirements.

Plaintiffs argue that the Pembina land compensation rulings alone satisfy their jurisdictional proof requirements for this trust fund management litigation, and, relying on that faulty premise, plaintiffs offer no facts or legal authority specific to the per capita funds mismanagement claims demonstrating jurisdiction under the Indian Tucker Act. Pl. Opp. at pp. 7-11; *see also* 69 Fed. Cl. at 640-42. Plaintiffs must independently establish subject matter in every case based on the facts and claims presently before the Court. *See Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994) (claims are presumed outside federal courts' limited jurisdiction until plaintiffs demonstrate otherwise); *Renne v. Geary*, 501 U.S. 312, 316 (1991). Subject matter jurisdiction is not a "one time qualifies all" determination. It requires fact-specific and claim-specific findings that must be made on a case-by-case basis. *See, e.g., Northern Paiute Nation v. United States*, 10 Cl. Ct. 401, 404, 409 (1986) (Court independently found jurisdiction over current breach of treaty claim).

To prove jurisdiction under the Indian Tucker Act over the per capita beneficiary claims before this Court, Plaintiffs must demonstrate that 1) the PJF beneficiaries are a "identifiable group" and 2) the funds mismanagement claims are communal or "group claims,"as opposed to vested, individually-held claims.[4/] *Fields v. United States*, 191 Ct. Cl. 191, 423 F.2d 380, 383

[4/]The Court should reject Plaintiffs' invitation to follow *dicta* in *Wolfchild v. United States*, 62 Fed. Cl. 521, 538-40 (2004) (*Wolfchild I)* melding individual and Tribal claims into one. In ruling that the Court had concurrent jurisdiction over the same claims under both the Tucker Act,

(1970); *Northern Paiute Nation*, 10 Cl. Ct. at 404, 408.[5] Plaintiffs have not satisfied either requirement.

Plaintiffs rely entirely on the prior rulings to satisfy their burden of proof. The Pembina land compensation rulings cannot substitute for proof demonstrating that the current claims quality under the Indian Tucker Act. The funds mismanagement claims must stand or fall on their on own merit, not based on the characteristics of a predecessor claim. *See generally, Fort Sill Apache Tribe v. United States*, 477 F.2d 1360, 1362 (Ct. Cl. 1973) (question of whether a claim is Tribal or individual turns on the substance of the cause of action asserted); *Northern Paiute Nation* , 10 Cl. Ct. at 408 (Court " now turns to . . . the dispositive issues, to wit, 'whether in this case there is a distinct cause of action resting with the Tribe itself").

Far from being dispositive, the prior rulings are not controlling or even persuasive authority on the issue of whether the per capita beneficiaries' funds mismanagement claims qualify as a "group claim."[6] Plaintiffs must qualify "the beneficiaries of the 1964 and 1980

---

28 U.S.C. § 1491, and the Indian Tucker Act, *Wolfchild* did not address long-standing precedent dating from the ICC-era forward distinguishing Tribal communal claims from individual Indian claims. For further discussion, please see Dft. Motion for Reconsideration, filed April 10, 2006, pp. 19-21.

[5] The prior rulings do illustrate one critical point. Demonstrating the existence of a "group claim: is a core jurisdictional requirement, which the prior rulings reference repeatedly. *See* Pl. Opp., pp 7-9, quoting Indian Cl. Comm'n 575, 576 (1951) (repeatedly referencing "common claim" requirement).

[6] Plaintiffs' reference to a ruling under the ICCA in the underlying actions specifying that the Award run in favor of the Tribes has no bearing on the jurisdictional issues presented here. *See* Pl. Opp., p. 9-10, *quoting Red Lake, Pembina and White Earth Bands, v. United States*, 164 Ct. Cl. 389 (Ct. Cl. 1964) and *Red Lake*, 355 F.3d at 942. Under the ICCA, awards had to run in favor of a Tribal entity, however this case is not brought under the ICCA. Further, awards can run in favor of individual Indians under 28 U.S.C. § 1491; *see also Fields*, 423 F.2d at 383.

Awards, as defined in the 1971 and 1982 Distribution Acts[[7]] . . . their heirs, descendants, and successors-in-interest"[8] as an "identifiable group." Pointing to rulings qualifying a different group - the descendants of the Pembina Band of Indians as it existed during the 1800s when lands were ceded to the United States - does not satisfy Plaintiffs' burden. *See* Pl. Opp., p. 7, quoting Indian Cl. Comm'n 575, 576 (1951). The groups are not only differently defined, membership is not coextensive. Pembina descendants had to qualify for enrollment under the 1971 and 1982 Distribution Acts, and members of the Little Shell Band were allowed to share in the PJF even though Little Shell was not one of the Tribal plaintiffs before the ICC or the Court of Claims in the underlying actions. *See Red Lake and Pembina Bands; Turtle Mountain Band of Chippewa Indians* ; 1971 Distribution Act; 1982 Distribution Act.

The claims that Plaintiffs are attempting to qualify based on prior precedent are even more dissimilar. The land compensation claims bore the hallmarks of a classic Tribal claim. The Pembina Band as a whole ceded undivided lands to the United States and later brought an action claiming that the United States underpaid the Tribe for the ceded lands. The Tribe had a communal claim for additional compensation and that coupled with its "identifiable group" status brought the action within the jurisdiction of the ICCA. *See, e.g. Northern Paiute Nation*, 10 Cl. Ct. at 409-10 (Tribe had a communal claim for breach of treaty agreeing to provide water irrigation system).

The funds mismanagement claims Plaintiffs now assert lack the hallmark characteristics

---

[7] Act of December 31, 1982, 96 Stat. 2022 ("1982 Distribution Act").

[8] The Court defined the Plaintiffs' group in these terms. 69 Fed. Cl. at 673.

of a communal claim. Not only has the PJF has been distributed to the per capita beneficiaries,[9] the 1971 and 1982 Distribution Acts and the distribution process provide a basis for determining when ownership rights vested in individual per capita beneficiaries.[10] *See LeBeau v. United States*, 171 F.Supp. 1009, 1017-20 (D.S.D. 2001) (Court looked in part to distribution act provisions in determining whether and when individual rights vested in judgment award); *see also Sisseton-Wahpeton Sioux Tribe v. United States*, 686 F. Supp. 831, 836 (D. Mont. 1988).

With respect to the 1964 Award, Congress made clear in the 1971 Distribution Act that only individuals who qualified as Pembina descendants could receive any funds from the 1964 Award. 25 U.S.C. § 1245.[11] Section 1245 provides that "[O]nly those members of the three cited tribes who are enrolled as Pembina descendants under the provisions of this subchapter shall be permitted to share in any per capita distribution of the funds accruing to the tribes."

---

[9] *See* Azure Decl., ¶ 5(b) (discussing determinations on applications for 1971 Act ), filed in Appendix to Dft. Motion to Dismiss or in the Alternative, for Partial Summary Judgment, filed May 27, 2005.

[10] Plaintiffs ignore the necessity of assessing the current claims in light of the Distribution Acts. Pl. Opp., p. 15 & n. 8. By arguing that the Acts constitute nothing more than a roadmap for distributing the funds and "have no bearing on the claims raised herein," Pl. Opp., pp. 15-16, Plaintiffs impermissibly ignore the language, intent and operative effect of the Distribution Acts discussed above.

[11] It is not necessary to look to the legislative history, since Congress made its intent plain in the language of the 1971 Distribution Act. The legislative history does, however, reflect the clear understanding that the judgment fund monies belong to Pembina descendants, not to the Tribal entities. *See* Sen Report No. 92-142 (June 4, 1971); HR Report No. 92-150 (April 22, 1971) *(*acknowledging that 1971 Distribution Act provides for preparation of eligibility rolls with judgment fund monies to be distributed among Pembina descendants, both Tribal and non-Tribal members, in proportion to their numbers*).*

These provisions and the Tribal resolutions providing for per capita distribution make clear that thee enrolled individuals, not the Tribes qua Tribes, had a "right" to participate in the award. Congress plainly signaled that the funds belonged to the individual enrolled Pembina descendants and not to the Tribes. *See also* 25 U.S.C. § 1244 ("Funds not apportioned in this manner shall be distributed in equal shares to **those enrolled descendants** who are not members of the three cited tribes." Bold emphasis supplied.).

The 1982 Distribution Act also includes language acknowledging Congress' clear understanding that eighty percent of the 1980 Award belonged to individuals, not to Tribal entities. *See, e.g.* 1982 Distribution Act, Secs. 3, 4, 5,6; *see also Id.* at Sec. 8(a) ("Any payment of a per capita share of funds to which a living competent adult is entitled under this Act shall be paid directly to such adult."). In addition, the 1982 Act provides for the inheritance of per capita shares in the event that the beneficiary dies. 1982 Distribution Act, Sec. 8(b). Allowing heirs to inherit per capita shares, regardless of when those shares are distributed, is also consistent with individually vested property rights.[12] *See generally Sisseton-Wahpeton Sioux Tribe*, 686 F. Supp. at 836 (Distribution Act triggered designated portion of judgment fund being held for the benefit of, and payable to, individual lineal descendants).

Analyzing the funds mismanagement claims from a different - but equally valid vantage point - by considering who will receive the proceeds of a recovery or settlement - the result is the same. Both the parties and the Court agree that the proceeds of any recovery will

---

[12] Even if, as was argued in *Sisseton-Wahpeton Sioux*, 686 F. Supp. at 836-37 and *LeBeau*, the individual did not acquire vested rights until Interior acted on their applications, those dates still precede the dates of distribution. *See* Decl. Marion, ¶ 28, (submitted in Appendix to Dft. Motion to Dismiss or in the Alternative, for Partial Summary Judgment, filed May 27, 2005.

automatically be paid to the beneficiaries.[13] *See* 69 Fed. Cl. at 671; TR, July 29, 2002, p. 8; *see also* Pub. L. No. 92-59, 85 Stat. 158-159 (1971), codified at 25 U.S.C. §§ 1241-1248 ("1971 Distribution Act"); 1982 Distribution Act § 2. If the beneficiaries have the unquestioned right to receive the proceeds, then they necessarily have a vested interest in the claim itself. If the beneficiaries have a vested interest in the funds mismanagement claim, they necessarily have certain due process rights in pursuing that claim.

**2. The Indian Tucker Act group claim and class action commonality requirements are not interchangeable.**

In urging the Court to ignore the distribution process as irrelevant,[14] Plaintiffs apply the wrong standard. Plaintiffs impermissibly blur and intermingle the Indian Tucker Act "group claim" and class certification criteria focusing on common issues of law and fact under Rule of the Court of Federal Claims ("RCFC") 23 and *Quinault v. Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972).[15] The Indian Tucker Act "group claim" requirement focuses on the

---

[13] The Tribes will share in a recovery only to the extent that their beneficiary status entitles them to a proportionate share based on their twenty-percent allocations of the 1980 Award.

[14] Pl. Opp., pp. 13-17.

[15] Specifically, Plaintiffs argue that they are proceeding on theories of liability that present "common issues of law and fact: *actions on the part of a fiduciary that affect each and every eligible beneficiary similarly.*" Pl. Opp., p. 14 n. 7 (italic emphasis in original). Plaintiffs further argue that they have a "collective interest in ascertaining whether the government had a fiduciary duty to them . . ." *Id.* Plaintiffs also state "The facts and law that are pertinent to liability and damages determinations in this action are the same regarding all PJF beneficiaries." Pl. Opp., p. 14 n. 7. In each instance, Plaintiffs are arguing grounds for class certification, not a basis for finding a communal claim under the Indian Tucker Act. *See Northern Paiute Nation,* 10 Cl. Ct. at 408."

Although Plaintiffs cite to *Wolfchild I* in making their argument, this Court should decline to follow dicta in *Wolfchild* that blurs and misapplies the Indian Tucker Act jurisdictional

nature of the claim. The claim must be communal, i.e. owned by the group, not by a collection of individuals assembled into a group for purposes of asserting their individual claims in a single action for the sake of efficiency or judicial economy. A claim is communal if it arises out of an indivisible interest held by the Plaintiff group. *See Northern Paiute Nation*, 10 Cl. Ct. at 404. Group claims are grounded in wrongs done to or harm suffered by the group, not wrongs inflicted on or damages sustained by its individual members. *Fort Sill Apache*; 477 F.2d at 1360-64*; see also Upper Chehalis Tribe v. United States*, 155 F. Supp. 226 (Ct. Cl. 1957).

Class certification commonality requirements focus on the nature of the issues before the Court. The Court evaluates whether the parties' claims raise shared or common issues of law and fact that can efficiently be tried in one action. The claims are individual; the issues are shared. *See* RCFC 23 and *Quinault.*

Not only do the "group claim" and commonality criteria differ, they cannot be used interchangeably because the class actions and group claims are founded on fundamentally different premises. Class actions allow a collection of individuals to bring their individually-held claims in a single action for reasons of efficiency and judicial economy. The Indian Tucker Act allows an "identifiable" group of Indians to litigate a "communal" interest by litigating a group claim. The group is the stakeholder, not the individual group members. "To have a cause of action cognizable here, the claim must be for a wrong done to the Tribe *qua* Tribe." *Northern Paiute Nation*, 10 Cl. Ct. at 408:

requirements. *See* Dft. Motion for Reconsideration, filed April 10, 2006, pp. 9-21 and p. 4 n. 4 above.

Because the group is before the Court and the group is the stakeholder, the Indian Tucker Act does not have or require separate criteria or mechanisms for assuring that absent stakeholders are afforded due process. If the claim truly qualifies as a communal, there are no absent stakeholders. Class actions, on the other hand, allow a group of unrelated, otherwise unconnected individuals to bring claim(s) in a single action for reasons of efficiency and judicial economy.[16] Typically, a few stakeholders act in a representative capacity in litigating claims of absent stakeholders. To ensure that the rights of the absent stakeholders are fairly protected, the class action rules incorporate carefully-constructed criteria to ensure that there are no conflicts of interest and that class representatives are members of the class and have the ability to fully and fairly represent the interests of the entire class.

Individual ownership of the per capita claims makes it impossible for the per capita beneficiaries to litigate their claims as a "group claim" under the Indian Tucker Act. The per capita claims alleged here are not a communal claim, held by a group of people, as the Indian Tucker Act requires. The absence of a qualifying "group claim" under the Indian Tucker Act deprives this action of safeguards that jurisdictional requirement would otherwise provide. If the criteria for litigating under the Indian Tucker Act are met, there is no need for additional safeguards, such as joinder or class certification procedures, to ensure compliance with due process requirements. Those assurances are in the group claim qualification itself. If the claims litigated belong to the group that is before the Court, then the parties before the Court are the

[16] *See* 69 Fed. Cl. at 674 ("[A]uthorities requiring notice and joinder as a condition precedent for benefitting from any possible award are not applicable to a proceeding by an identifiable group.*"); cf. Wolfchild*, 62 Fed.Cl. at 554-55 (notice not required under either a class action or other means of joining those lineal descendants not named as plaintiffs).

same as the stakeholders, who own the claims and who have the right to control their disposition. Joinder rules, class certification, and other mechanisms developed to protect the rights of absent parties and fairly bind them by the outcome are unnecessary. There are no "absent parties" whose interests need to be protected. The party holding the claim - the group -is before the Court.

**3. Allowing the claims to be litigated under the Indian Tucker Act will result in manifest injustice by failing to guarantee the due process rights of absent stakeholders.**

The group claim requirement is not only jurisdictionally mandatory, but when it is not met due process concerns arise. By requiring proof that the claim is communal, the requirement insures that the individual(s) or entities that before the Court are in fact the claim owners or stakeholders. The litigant(s) and the stakeholder(s) are one and the same, and here is no need to be concerned about safeguarding the due process rights of absent stakeholders. If, however, the claims are individually-held, and not communal, the same does not hold true. All the stakeholders are not collectively before the Court, and the absent stakeholders have a right to notice and to be heard on the disposition of their claims, and must somehow be assured of those rights. *See In re Consolidated United States Atmospheric Testing Litigation v. United States,820 F.2d 982 (9th Cir. 1987)* (due process requires notice and opportunity to be heard "appropriate to the nature of the case.").

The individually-held per capita claims cannot be litigated without complying with one of the established mechanisms for litigating claims of parties not directly before the Court. If those mechanisms are not followed, there is no adequate assurance that the Court and the parties

can protect the due process rights of the individual per capita beneficiaries, which could undermine the finality of any judgment or settlement obtained. Failing to assure the absent stakeholders of their due process rights would result in manifest injustice.

**CONCLUSION**

For all the reasons discussed here and in the United States' opening brief, the Court should reconsider and vacate the decision to allow the per capita funds mismanagement claims to be litigated as a "group claim" under the Indian Tucker Act with the Plaintiff Tribes representing the per capita beneficiaries, enter an order denying Plaintiffs' motion for class certification on the grounds argued in the United States' opposition briefs and Motion to Supplement the Record with Declaration of Ross O. Swimmer, filed January 17, 2006, and order the Plaintiffs to demonstrate a valid basis for litigating the individual claims of parties who are not before the Court.

Dated this 25th day of May, 2006.

Respectfully submitted,
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

_/s/ Carol L. Catherman__
CAROL CATHERMAN
Department of Justice
Environment & Natural Resources Division
Natural Resources Section, P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0465
Facsimile: (202) 353-2021

Counsel of Record for Defendant

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Chippewa Cree Tribe of the Rocky Boy's Reservation, et al., | : | |
| Plaintiffs | : | No. 92- 675 L |
| v. | : | Judge Emily C. Hewitt |
| United States of America, | : | |
| | : | **CERTIFICATE OF SERVICE** |
| Defendant | : | |

I hereby certify that on May 25, 2006, I caused a true copy of the foregoing Reply Brief in Support of Defendant's Motion for Reconsideration of a Portion the Court's Opinion and Order Dated January 26, 2006 pursuant to Rule 54(b) and 59(a), by electronic filing, on

Melody L. McCoy, Attorney
Native American Rights Fund
1506 Broadway
Boulder, CO 80302

A courtesy copy of the foregoing was also forwarded to plaintiffs' counsel via E-mail addressed to mmccoy@narf.org.

Dated this 25th day of May, 2006.

CAROL CATHERMAN
Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0465
Facsimile: (202) 353-2021

Counsel of Record for Defendant