IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHIPPEWA CREE TRIBE OF THE ROCKY BOY'S RESERVATION, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 92-675 L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | November 14, 2007 |
| Defendant. | ) | |

**JOINT STATUS REPORT**

This Joint Status Report (JSR) is submitted pursuant to the Court's Orders of October 21, 2007 (¶1(a) (Doc. # 306) and October 23, 2007 (Doc. # 307).

**I. BACKGROUND**

The Plaintiff Group, consisting of the beneficiaries of the 1964 and 1980 Pembina Judgment Fund ("PJF") Awards and their heirs, descendants, and successors-in-interest, and the Defendant, the United States of America, continue to be engaged in settlement negotiations with the objective of resolving Plaintiffs' PJF trust management claims.

**II. SPECIFIC MATTERS**

**A. 1964 Award and 1980 Award "Phase I" (March 1980 - May 1988)**

These claims have been assigned to ADR proceedings with Judge Eric Bruggink. *See* Order (¶2) of Aug. 2, 2007 (Doc. # 298). Since the last JSR of October 19, 2007 (Doc # 305), the parties conducted an in-person day-long ADR Settlement Conference before Judge Bruggink at the Court of Federal Claims in Washington, D.C on November 8, 2007. Attending the ADR Settlement Conference for the Plaintiffs were Melody McCoy, Native American Rights Fund, and Kevin Nunes

and Peter Ferriero, Rocky Hill Advisors, Inc. Attending for Defendant were Carol Draper and Jacob Haseman, U.S. Department of Justice; Elisabeth Brandon, U.S. Department of the Interior, Solicitor's Office; Charles Evans and John Carpenter, U.S. Department of the Interior, Office of the Special Trustee for American Indians; and, Dr. Simon Wu and James Conversano of FTI Consulting, Inc.

At the conclusion of the November 8, 2007 ADR Settlement Conference, it was determined that it was highly unlikely that an in-person ADR Settlement Conference could be held in December 2007 due to the existing schedules and commitments of the many people involved. Accordingly, it was agreed that at least counsel for the parties will participate in an ADR Settlement Telephonic Status Conference (TSC) with Judge Bruggink on November 30, 2007. *See* Scheduling Order of November 8, 2007 (Doc. # 309). At Judge Bruggink's request, each side will perform additional work and will be prepared to discuss the outcome of that work during the November 30, 2007 ADR TSC.

In addition, on November 9, 2007, this Court entered an Order requiring the parties to advise the Court by Motion on or before January 4, 2008 about future ADR proceedings. (Doc. # 310). Counsel for the parties are prepared to comply timely with this Order.

**B. Document Inspection at the AIRR**

As reported in the JSR of October 19, 2007, (Doc. # 305), counsel for the parties reviewed documents and other materials relevant or potentially relevant to the claims and defenses in this case maintained at the American Indian Records Repository ("AIRR") located in Lenexa, Kansas, in late September 2007. Under the October 23, 2007 Order (Doc. # 307), Defendant was to have begun providing Plaintiffs with imaged and coded documents from this AIRR inspection on November 2,

2007, however, Defendant has encountered technical difficulties in completing the final production volumes for the first installment of documents. Defendant has identified and believes it has resolved the technical difficulties, and therefore expects to begin providing these documents to Plaintiffs on or before November 26, 2007.[1]

**C. 1980 Award Phase II (May 26, 1988 - September 30, 1992)**

1. There are six White Earth potential baseline transactions identified for this time period. Since the last JSR (Doc. # 305), with the provision by Defendant to Plaintiffs of advice or evidence for two of these transactions, the parties have reached agreement on the dates of a total of three of the six transactions. However, based on the advice or evidence provided most recently, Plaintiffs have raised with Defendant "timing" issues for two of the three transactions (*i.e.,* the issue of whether certain disbursements represent funds already disbursed from the PJF that should not have been disbursed and / or should have been credited back to the PJF).

In addition, Defendant estimates that advice or evidence requested by Plaintiffs for two more of these White Earth transactions will be provided on or before November 21, 2007.[2] In Plaintiffs' view, without this advice or evidence, Plaintiffs are unable to evaluate fully the validity of these transactions and whether there are any timing issues with the transactions, but upon receipt of legible advice or evidence Plaintiffs will report back to Defendant on these points within three business days.

Finally, despite discussions between the parties by teleconference on October 24, 2007 and

---

[1] Plaintiffs do not agree that Defendant needs or should have this amount of time to provide such documents.

[2] Plaintiffs do not agree that Defendant needs or should have this amount of time to provide such documentation.

November 5, 2007, the parties remain in disagreement on the date of the second largest (in terms of dollar amount) of these White Earth transactions.

Thus, although the parties have devoted considerable time and effort toward resolving the validity of and timing issues regarding certain Phase II baseline transactions, at this time they simply are not in accord with respect to several critical remaining issues. Defendant has been working to prepare a presentation for Plaintiffs that will present Defendant's "overall view" of transactions for the Phase II period and movement of monies in and out of the PJF accounts in the hopes that this explanatory information will answer Plaintiffs' concerns. Defendant anticipates making the presentation on or after December 7, 2007, depending on the parties' and their consultants' availability.

If Plaintiffs have any lingering concerns or the parties are not in total agreement on all Phase II baseline transactions after Defendant's presentation, Defendant is of the view that the parties will have reached a point where they have seemingly exhausted their options for resolving these issues through continuing discussions among themselves. Defendant would therefore respectfully request that at that juncture the Court refer any remaining unresolved Phase II transactions to Judge Bruggink for the purpose of facilitating a negotiated resolution which will allow the parties to close out the work on the Phase II baseline transactions and begin economic investment modeling for that Phase of the 1980 Award. Plaintiffs are considering this proposition and will respond to it during the TSC on November 16, 2007.

2. Regarding the nine non-member lineal descendants' potential baseline transactions for this time period, despite discussions by teleconference on October 24, 2007 and November 5, 2007, the parties remain in disagreement about the validity of at least three of these transactions, and,

based on the documentation provided by Defendant to date, Plaintiffs have been unable to determine whether, even assuming their validity, there are any timing issues for these transactions. For the reasons stated above, Defendant respectfully requests that any unresolved Phase II non-member lineal descendant baseline transactions issues that remain after Defendant's presentation be referred to Judge Bruggink. Plaintiffs are considering this proposition and will respond to it during the TSC on November 16, 2007.

3. There are twelve (12) potential per capita baseline transactions (eleven for Turtle Mountain and one for Little Shell) identified by Plaintiffs as being at issue for this time period.

a. As previously reported, (JSR ¶ II(B)(3)(a); Doc. #305), the parties have reached agreement at least for settlement purposes on the general validity of these 12 transactions.

b. Despite discussions by teleconference on October 24, 2007 and November 5, 2007, the parties remain in disagreement about the timing issues for 11 of these 12 transactions. For the reasons stated above, Defendant respectfully requests that any unresolved Phase II Turtle Mountain or Little Shell baseline transactions issues that remain after Defendant's presentation be referred to Judge Bruggink. Plaintiffs are considering this proposition and will respond to it during the TSC on November 16, 2007.

4. Regarding Defendant's proposed alternative testing of receipt ("TS") transactions, *see* JSR ¶ II ( C) (4) (Sept. 14, 2007; Doc # 300), on October 31, 2007 Defendant reported to Plaintiffs the results of its work to date on testing these transactions for both Phase II and Phase III. The parties discussed this report during a teleconference on November 5, 2007. Plaintiffs informed Defendant that they remain unconvinced that the alternative testing resolves Plaintiffs' timing issues concerns, and therefore Plaintiffs' position regarding the timing issues remains unchanged. For the

reasons stated above, Defendant respectfully requests that any unresolved Phase II receipt baseline transactions issues that remain after Defendant's presentation be referred to Judge Bruggink. Plaintiffs are considering this proposition and will respond to it during the TSC on November 16, 2007.

**E. 1980 Award Phase III (October 1, 1992 to December 31, 1995)**

1. As reported previously, the parties have identified jointly a total of 501 potential baseline transactions for all PJF beneficiaries for this time period. *See* JSR ¶ II (D) (1) (Sept. 14, 2007; Doc # 300). On September 12, 2007, Plaintiffs provided to Defendant a scoping proposal for selecting 113 of these 501 transactions for validation. On October 19, 2007, Defendant provided Plaintiff with a counter-scoping proposal. Plaintiffs responded to Defendant's counter-proposal during the teleconference on October 24, 2007. Plaintiffs informed Defendant that they do not accept the counter proposal, and that Plaintiffs' proposal of September 12, 2007 remains unchanged but is still proffered as a proposal.

2. As stated above, (¶ D(4)), the parties discussed Defendant's proposed alternative testing of receipt ("TS") transactions in an effort to resolve the timing issues during a conference call on November 5, 2007, but were unable to reach agreement on this matter.

3. Due to the remaining disagreements on Phase III baseline transaction issues, at this time Defendant respectfully requests that the Court refer the Phase III baseline transactions to Judge Bruggink for the purpose of facilitating a negotiated resolution which would allow the parties to expeditiously perform and complete any necessary work on the Phase III baseline transactions and begin economic investment modeling for that Phase of the 1980 Award. Plaintiffs are considering this proposition and will respond to it during the TSC on November 16, 2007.

**F. 1980 Award Phase IV**

1. The PJF 1980 Award Phase IV time period consists of January 1, 1996 - present. As provided in the Order of October 23, 2007 (¶ 3) (Doc. # 307), this JSR is to provide "the parties proposal as to when and how they will begin to compile advice and evidence regarding transactions for this phase."[3]

2. Plaintiffs' initial review of the "common data set" of transactions for the time period January 1, 1996 through August 31, 2005 provided by Defendant on a compact disc indicates that the potential total number of non-investment and investment transactions for all accounts of the PJF for this time period is 13,365, of which 4,482 appear to be baseline transactions based on the government's coding of the transactions. At this time Plaintiffs are prepared to present, by November 21, 2007, this list of potential baseline transactions to Defendant along with a request for source documents by which validation for the Phase IV transactions may be conducted along the lines of the other 1980 Award phases for settlement purposes. Both parties are amenable to a scoping approach yet to be defined for this subset of potential baseline transactions.

At this time Defendant, however, would respectfully request that the Court refer the Phase IV baseline transactions to Judge Bruggink for the purpose of facilitating a negotiated resolution which would allow the parties to expeditiously perform and complete any necessary work on the Phase IV baseline transactions and begin economic investment modeling for that Phase of the 1980 Award. Plaintiffs are considering this proposition and will respond to it during the TSC on

---

[3] Plaintiffs believe that, to be consistent with the treatment of the other baseline transactions at least for settlement purposes," this sentence should read "when and how they will begin to compile the validity documentation, including advice or evidence regarding transactions for this phase."

November 16, 2007.

Respectfully submitted on this 14th day of November, 2007.

/s/ Melody L. McCoy
MELODY L. MCCOY
Attorney of Record for Plaintiffs
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel: (303) 447-8760
Fax (303) 443-7776

/s/ Carol L. Draper
CAROL L. DRAPER
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0465
Fax: (202) 353-2021

Of Counsel:

Elisabeth C. Brandon
Department of the Interior
Office of the Solicitor

Teresa E. Dawson
Department of the Treasury
Office of Chief Counsel
Financial Management Service